UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TRUSTEES OF THE TEAMSTERS UNION NO. 142 PENSION FUND, *et. al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PATRIOT PAVING & EXCAVATING LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Cause No. 2:24-CV-349-PPS-AZ |

## OPINION AND ORDER

Following the entry of default, Plaintiffs Trustees of the Teamsters Union Local No. 142 Pension Fund, Training and Apprenticeship Fund, and Annuity Fund (the "Funds") now seek a default judgment against Defendant Patriot Paving & Excavating LLC ("Patriot"). [DE 7; DE 8; DE 9.] For the reasons discussed below, I grant the Funds' Motion for Default Judgment.

The Funds allege that Patriot failed to pay contributions to the Funds as required by one or more collective bargaining agreements and the agreements incorporated therein. The allegations are relatively straightforward. The Plaintiffs are trustees and fiduciaries of the Funds, which includes a pension plan, a contribution plan, and an employee welfare plan established for unionized construction workers located in northwest Indiana. [DE 1 at ¶ 4.] Patriot is a construction company which employs workers who are covered by the relevant CBA and the agreements incorporated therein.

[*Id*. at ¶ 5.] The CBA incorporates the Funds' Trust Agreements, which, in turn, authorize the Funds to promulgate and enforce written collection policies. [*Id*. at ¶ 7.] Pursuant to the terms of the CBA and those incorporated agreements, Patriot is required to contribute to the Funds, to submit monthly contribution reports, and, upon the Funds' request, to submit to payroll audits. [*Id*. at ¶¶ 6, 8–9.] If Patriot is delinquent in its contributions, the CBA and incorporated agreements permit the Funds to collect liquidated damages of 20% of the unpaid contribution amount and interest at a rate of 10% per annum until payment is made in full. [*Id*. at ¶ 8.]

The Funds say that Patriot failed to make, or was late in making, required contributions to the Funds for the months of April through August 2024.[1] [*Id*. at ¶¶ 10–15.] The Funds allege that, as of the filing of their Complaint, Patriot owes $106,050.14 in unpaid contributions. [*Id*. at ¶¶ 11, 14.] The Funds further allege that Patriot's failure to make timely, required contributions thereby subjects the delinquent contributions to the agreed upon liquidated damages and interest. [*Id*. at ¶¶ 16–21.] The Funds bring suit under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act of 1947 ("LMRA"). [*See id*.]

The Funds filed this case on October 3, 2024. [*Id*.] On October 8, 2024, the Funds filed an executed summons for Patriot's registered agent. [DE 5.] The executed

---

[1] In their Complaint, the Funds allege unpaid contributions for the months of April through August 2024, though they also request "unpaid contributions which should accrue during the pendency of this action." [DE 1 at 6.] As described in the documentary evidence the Funds submitted to support their damages request, the Funds now seek unpaid contributions for the months of July through November 2024. [DE 9-1 at ¶8.]

2

summons included UPS shipping documentation confirming receipt of the summons by Patriot on October 7, 2024, at Patriot's listed address in Portage, Indiana. [*Id*. at 3–6.] After Patriot's deadline to plead, answer, or otherwise respond to the Funds' Complaint expired, the Funds on November 19, 2024, applied for entry of default against Patriot. [DE 6.] On November 20, 2024, the Clerk entered default against Patriot. [DE 7.]

To date, Patriot has never responded to this lawsuit, and no attorney has entered an appearance in this Court on Patriot's behalf. On January 29, 2025, the Funds filed the present Motion for Default Judgment requesting I enter judgment against Patriot in the amount of $165,429.02. [DE 8; DE 9.] The Funds also served both the motion and the supporting brief on Patriot, but the Court has received nothing from Patriot in response. [DE 9 at 6.] The Funds represent that this figure includes all unpaid contributions, liquidated damages, interest, and attorney's fees and costs due to them. [*Id*. at 5.] The Funds also request an award of post-judgment interest and additional attorney's fees and costs incurred in collecting the judgment amount. [*Id*.]

Federal Rule of Civil Procedure 55 governs the entry of defaults and default judgments and involves two stages: establishing "default, and the actual entry of a default judgment." *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (citation omitted); Fed. R. Civ. P. 55. Prior to obtaining a default judgment under Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a). *VLM Food Trading Int'l, Inc..*, 811 F.3d at 255. Under Rule 55(a), the Clerk is to enter the default of a party against whom a judgment is sought when that party has failed to

3

plead or otherwise defend. Fed. R. Civ. P. 55(a). Upon entry of a default, all well-pleaded facts in the complaint are taken as true for purposes of liability. *VLM Food Trading Int'l, Inc..*, 811 F.3d at 255. Because the Clerk has entered default, I assume that the Fund's well-pleaded allegations regarding Patriot's failure to comply with the requirements of the CBA and other applicable agreements are true.

A default judgment establishes, as a matter of law, that the defendants are liable to the plaintiff on each cause of action alleged in the complaint. *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). An entry of default judgment, however, is not mandatory simply because a party doesn't appear, it is still a matter of discretion for the district court judge. *See O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1991). In exercising that discretion, I consider a number of factors, including whether there is a material issue of fact, whether the default is largely technical, whether the plaintiffs were substantially prejudiced, and how harsh an effect a default judgment might have. *See* Wright & Miller 10A Fed. Prac. & Proc. Civ. § 2685 (4th ed.).

Rule 55(b)(2) provides that a court "may conduct hearings" to determine, among other issues, "the amount of damages" prior to entry of default judgment. Fed. R. Civ. P. 55(b)(2)(B). A district court must "ascertain the amount of damages with reasonable certainty." *In re Catt,* 368 F.3d 789, 793 (7th Cir.2004) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999)). In the Seventh Circuit, "judgment by default may not be entered without a hearing on damages unless 'the amount claimed is liquidated or capable of ascertainment from definite figures contained in the

4

documentary evidence or in detailed affidavits.'" *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (internal citation omitted).

To support their request for unpaid contributions, interest, liquidated damages, attorney's fees and costs, and post-judgment interest, the Funds rely upon two affidavits and supporting spreadsheets. Somewhat surprisingly, the Funds have never submitted to the Court their CBAs or incorporated agreements with Patriot. One of the submitted affidavits references cost sheets as the basis for its calculations, but those costs sheets were not submitted either. A better approach would have been for the Funds to submit these documents to the Court. This is because affidavits standing alone, or affidavits that do not explain how damages were calculated, are not enough to support damages in a request for default judgment. *See Padilla v. Diaz*, No. 4:23-cv-00170-SEB-KMB, 2024 WL 4008493, at *3 (S.D. Ind. Aug. 30, 2024); *Trs. of Ind. Elec. Workers Pension Tr. Fund IBEW v. Darnell, Inc.*, No. 1:19-cv-04301-JPH-DML, 2020 WL 735696, at *1 (S.D. Ind. Feb. 13, 2020) ("Plaintiffs have not submitted the work reports referenced in the affidavit or explained their contents, and the affidavit does not explain who calculated the unpaid contributions or how those calculations were made.")

That said, for the reasons I describe below, I find that the affidavits are sufficiently detailed to support the Funds' request for default judgment and that a hearing is not required. *See e360 Insight*, 500 F.3d at 602. As I will now discuss, both affidavits explain their relevant calculations and include spreadsheets that detail the figures relied upon. *See Tr. of Int'l Painters & Allied Trades Local No. 47 v. Mid-States*

5

*Painting Co.*, No. 1:20-cv-1560-JPH-DLP, 2021 WL 5235113, at *1 (S.D. Ind. Nov. 8, 2021) (holding that damages were established by an affidavit with supporting spreadsheets that itemized damages and summarized the defendant's audited documents).

Under 29 U.S.C. § 1132(g)(2)(A), the court shall award unpaid contributions when entering judgment in favor of a plan covered by ERISA. The Funds request $133,165.67 in unpaid contributions. [DE 9-1 at 4.] In support, the Funds rely on the declaration of Jay Smith, the Fund Manager of the Funds. [DE 9-1.] Smith declares he is responsible for, among other duties, administering collection of employer contributions for the Funds. [*Id*. at ¶ 4.] Smith says he calculated the unpaid contributions based on work reports submitted by Patriot for the months of July through November 2024. [DE 9-1 at ¶ 8.] Smith's affidavit includes a spreadsheet that itemizes and totals the unpaid contributions. [*Id*. at 4.] Smith's uncontested affidavit and supporting spreadsheet are sufficient to support the Funds' request for unpaid contributions of $133,165.67.

Under 29 U.S.C. § 1132(g)(2)(B), a court shall also award interest on the unpaid contributions. According to the Funds, the CBA and incorporated agreements with Patriot permit the Funds to receive 10% per annum interest on any unpaid contributions due to the Funds. The Funds point to Smith's affidavit in which he says he calculated $3,285.30 in total interest due to the Funds as of the date of his January 28, 2025, declaration. [DE 9-1 at ¶ 8.] Smith's affidavit includes a spreadsheet that itemizes and totals the interest due to each fund. [*Id*. at 4.] The Funds are entitled to interest in

6

the amount of $3,285.30 plus ongoing interest at the same rate until the unpaid contributions are paid in full.

Under 29 U.S.C. § 1132(g)(2)(C), a court shall also award liquidated damages provided for in the plan in an amount capped at 20% of the unpaid contributions. Recall that the Funds represent that their agreements with Patriot permit them to request the full 20% in liquidated damages. [DE 1 at ¶ 8.] Once more, the Funds rely on Smith's affidavit in which he articulates his 20% calculations for liquidated damages on the unpaid amounts due to each of the three funds. [DE 9-1 at ¶ 8.] Smith calculates the total liquidated damages at $26,633.14. [*Id*.] Based on his uncontested affidavit and the supporting documents, the Funds are entitled to liquidated damages of $26,633.14.

As for the attorney's fees, they are recoverable pursuant to 29 U.S.C. § 1132(g)(2)(D). I have considerable discretion in awarding attorney's fees under ERISA and I may award them so long as a claimant shows "some degree of success on the merits." *Chesemore v. Fenkell*, 829 F.3d 803, 816 (7th Cir. 2016) (citation omitted). The declaration of the Fund's counsel, Paul Stoehr, lays out the hourly rates of all attorneys and paralegals involved in this matter and provides that attorney's fees in this case total the modest sum of $1,940. [DE 9-2 at 1–2.] Stoehr's declaration is sufficient to establish the amount of attorney's fees. *See e.g.*, *United States v. Eckert*, Case No. 3:18-CV-027 JD, 2018 WL 3617261, at *2 (N.D. Ind. July 30, 2018) (explaining that a signed declaration under penalty of perjury is enough to support outstanding balances for purposes of default judgment).

Stoehr has also provided what appears to be an attorney billing sheet which includes the name of the professional engaged in the work, the amount of time spent, a description of the work, the hourly rate for the work, and the total cost of the work. [DE 9-2 at 4–5.] The total cost incurred by the Funds' counsel is reasonable considering the time spent investigating this case, drafting the complaint, drafting the amended complaint, serving Patriot, and drafting the motion for default judgment. The Funds separately request as costs the $405 filing fee to initiate this action. [*Id*. at ¶6.] The Funds are entitled to attorney's fees and costs in the total amount of $2,345.

## Conclusion

For the foregoing reasons, Plaintiffs Trustees of the Teamsters Union Local No. 142 Pension Fund's, Training and Apprenticeship Fund's, and Annuity Fund's Motion for Default Judgment [DE 8] is **GRANTED**. The Funds are entitled to unpaid contributions, interest, liquidated damages, and attorney fees and costs totaling $165,429.11[2], plus ongoing interest on unpaid contributions until those contributions are paid in full and attorney's fees and costs incurred in collecting the judgment. Final judgment shall issue by separate entry.

Therefore, the Court:

1. **ORDERS** the Defendant Patriot Paving & Excavating LLC to pay the Plaintiffs unpaid contributions damages of $133,165.67.

---

[2] Based on the Court's own calculations, the Funds' submitted documentary evidence and affidavits result in a total amount owed of $165,429.11 instead of the $165,429.02 the Funds calculated themselves.

8

2. **ORDERS** the Defendant Patriot Paving & Excavating LLC to pay the Plaintiffs interest in the amount of $3,285.30 plus ongoing interest at the same rate until the unpaid contributions are paid in full.

3. **ORDERS** the Defendant Patriot Paving & Excavating LLC to pay the Plaintiffs liquidated damages of $26,633.14.

4. **ORDERS** the Defendants to pay to the Plaintiff attorney's fees and costs totaling $2,345.

**SO ORDERED**.

ENTERED: March 10, 2025.

                                    /s/ Philip P. Simon
                                    PHILIP P. SIMON, JUDGE
                                    UNITED STATES DISTRICT COURT